**UNITED STATES of America, Appellee,**

v.

**Jerry ARIGBODI, Defendant–Appellant.**

**No. 883, Docket 90–1527.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 7, 1991.

Decided Jan. 25, 1991.

Daniel Nobel, New York City, for defendant-appellant.

Pamela J. Davis, Brooklyn, N.Y., Asst. U.S. Atty. E.D. New York (Andrew J. Maloney, U.S. Atty. E.D. New York, Susan Corkery, Asst. U.S. Atty., of counsel), for appellee.

Before FEINBERG, NEWMAN and McLAUGHLIN, Circuit Judges.

PER CURIAM:

Jerry Arigbodi appeals from an August 1990 judgment of conviction in the United States District Court for the Eastern District of New York, I. Leo Glasser, J., imposing a sentence of 77 months imprisonment. The sentence followed Arigbodi's plea of guilty to knowingly and intentionally importing a controlled substance into the United States, in violation of 21 U.S.C. §§ 952(a), 960(a)(1) and 960(b)(3). On appeal, Arigbodi challenges only his sentence,

arguing that his criminal history category was improperly calculated. For reasons set forth below, we affirm.

In March 1990, Arigbodi arrived at JFK International Airport on a flight from Nigeria. When the plane landed, customs officers stopped Arigbodi and requested his consent to an x-ray examination, which he granted. The examination revealed the presence of balloons in his abdomen, and he subsequently passed 79 balloons containing a net weight of 484.27 grams of heroin.

Thereafter, Arigbodi was indicted for knowingly and intentionally importing a controlled substance into the United States (Count I) and knowingly and intentionally possessing heroin with intent to distribute (Count Two). In April 1990, Arigbodi pled guilty to Count One pursuant to an agreement with the government. Under the agreement, the government would not oppose either a two-point reduction in Arigbodi's offense level under the Sentencing Guidelines for acceptance of responsibility or a four-point reduction for minimal participation in the offense if the Probation Department deemed these reductions appropriate. The Probation Department endorsed the reductions, resulting in a recommended offense level of 22.

In further guideline calculations, the Probation Department charged Arigbodi with 12 points for his prior criminal history, thereby placing him in criminal history category V. The presentence report identified over 20 prior criminal convictions extending over a 10–year period from February 1977 to March 1987. Arigbodi received points toward his criminal history category for only nine of the convictions, dating back to 1981.

At sentencing in August 1990, Arigbodi's counsel argued that the court should downwardly depart in its criminal history assessment under U.S.S.G. § 4A1.3 from category V to category III because category V over-represented the seriousness of Arigbodi's criminal record. Judge Glasser rejected that argument. He noted first that if he chose not to grant the recommended six-point reduction in base offense level for minimal role and acceptance of responsibili-ty (which he said he could have done "with perfect justification"), Arigbodi's base offense level would rise to 28, a level carrying a guideline range of 78 to 97 months "even in a criminal [history] category of I." Second, Judge Glasser found that category V accurately represented defendant's criminal history, noting that Arigbodi's pattern of repeated convictions disclosed that he "paid no attention to the rules under which we in this country live." Accordingly, the judge imposed a sentence of 77 months, a period of three years of supervised release and a special assessment of $50.00, which represents the lowest end of the prescribed range for a base offense level of 22 falling within criminal history category V. Defendant is now serving his sentence.

In this court, Arigbodi identifies for the first time two different grounds of alleged error in the district court's calculation of his criminal history score, which resulted in imposition of an improper sentence. First, he argues that the district court erred in adding two points to his criminal history score for an uncounseled conviction that resulted in six months of imprisonment because such a conviction is constitutionally invalid. Arigbodi claims that counting a constitutionally invalid conviction violates the Sixth Amendment and is contrary to the intent of the Sentencing Guidelines. In support of his claim, he cites Application Note 6 to § 4A1.2 of the November 1989 edition of the Guidelines, which stated that "[c]onvictions which the defendant shows to have been constitutionally invalid may not be counted in the criminal history score." Second, Arigbodi contends that the district court erred in counting three uncounseled misdemeanor convictions that did not result in jail time, which collectively added one point to his criminal history score under § 4A1.1(c) of the Guidelines. He argues that the use of prior uncounseled misdemeanor convictions, even if they are constitutionally valid, to enhance his criminal history score violates the rationale of *Baldasar v. Illinois*, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980). *Baldasar* involved the use of a prior uncounseled misdemeanor conviction to convert a subsequent misdemeanor into a felony with a

prison term; the Court held that even though the prior misdemeanor conviction was constitutional because no prison term had been imposed, it could not be used to enhance the penalty for the second conviction.

The Commentary to the Guidelines upon which Arigbodi relies has been changed in the November 1990 edition. Application Note 6 to § 4A1.2 now provides that only sentences that "have been *previously ruled* constitutionally invalid are not to be counted" (emphasis added) in calculating a defendant's criminal history score, although in a further comment to § 4A1.2 entitled Background, the November 1990 edition also states that "[t]he Commission leaves for court determination the issue of whether a defendant may collaterally attack at sentencing a prior conviction." The same Background section also states that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed." This helps to clarify the intention of the United States Sentencing Commission; see also U.S.S.G. Appendix C, § 353. However, the Commentary does not decide the substantial constitutional question that remains, namely, whether it is consistent with the Sixth Amendment right to counsel to count uncounseled convictions of the types identified by Arigbodi in calculating a defendant's criminal history score.

We have no doubt that this court will be presented with ample opportunity in the future to confront this important issue of first impression for us. See *United States v. Eckford,* 910 F.2d 216, 220 (5th Cir.1990); but cf. *United States v. Williams,* 891 F.2d 212, 214 (9th Cir.1989), cert. denied, —— U.S. ——, 110 S.Ct. 1496, 108 L.Ed.2d 631 (1990). Under the circumstances of this case, however, we decline to reach this question now. As noted above, defendant failed to present either of his two grounds

of appeal in the court below, and thus they can be reviewed only under plain error analysis. This analysis requires that the alleged errors or defects affect a defendant's "substantial rights," Fed.R.Crim.P. 52(b), the violation of which would result in "manifest injustice," *United States v. Thomas–Hamilton,* 907 F.2d 282, 284 (2d Cir.1990). In the instant case, even if the district court erred in counting the uncounseled convictions in question, the reduction of three criminal history points from 12 to 9 would still result in classification of defendant as a category IV offender, subjecting him to a sentencing range of 63–78 months under the Guidelines.[1] Since the defendant could have received exactly the same sentence in the absence of the alleged error, we cannot say that its occurrence affected defendant's "substantial rights" resulting in a "manifest injustice."

Furthermore, in *United States v. Bermingham,* 855 F.2d 925, 934 (2d Cir.1988), this Court determined that:

> a dispute as to which of two overlapping guideline ranges is applicable need not be resolved where the sentence imposed would have been selected under either guideline range.

Appellant's failure to present to the district court the issues he now raises deprived that court of the opportunity to apply *Bermingham* and determine whether placement in category IV would have made any difference in the sentence. This further indicates why the alleged errors should not be entertained on appeal for the first time. Moreover, Judge Glasser's remarks at the sentencing hearing that he could have denied appellant a six-point reduction in base offense level from 28 to 22 "with perfect justification," so that even at criminal history category I he would be subject to a term of 78 to 97 months, gives a strong indication that he did not consider the criminal history category the decisive factor in imposing sentence.

---

**1.** Arigbodi's brief also suggests that an additional three points should be subtracted from his criminal history score, thus placing him in category III, "if, on subsequent proceedings in District Court, it should be confirmed that no counsel was present when Arigbodi was sentenced to

two years imprisonment" on one of the other convictions described in the presentence report. Since the record is silent on the issue whether this conviction was uncounseled, we decline to address the argument based upon this assumption.

The judgment of the district court is affirmed.