945 F.2d 496
 UNITED STATES of America, Appellee,
v.
Julio CASTRO-VEGA, Edwin Cintron-Rodriguez, Guillermo Picat,
Mario Gonzalez, Defendants,
Mario Gonzalez, a/k/a "Johnny," Edwin Cintron-Rodriguez,
a/k/a "Beekie," and Julio Castro-Vega,
Defendants-Appellants.
 Nos. 683, 762 and 812, 90-1087, 90-1205 and 90-1217.
United States Court of Appeals,
Second Circuit.
 Argued April 15, 1991.
Decided Sept. 16, 1991.
 
 James H. Fogel, New York City, for defendant-appellant Castro-Vega.
 Lawrence Mark Stern, New York City, for defendant-appellant Cintron-Rodriguez.
 Martin L. Schmukler, New York City, for defendant-appellant Gonzalez.
 Stephen Fishbein, Asst. U.S. Atty., New York City (Helen Gredd, Asst. U.S. Atty., Otto G. Obermaier, U.S. Atty., S.D.N.Y., of counsel), for appellee.
 Before MESKILL, PRATT and WALKER, Circuit Judges.
 WALKER, Circuit Judge:
 
 
 1
 This appeal raises an issue expressly reserved in United States v. Arigbodi, 924 F.2d 462 (2d Cir.1991): whether it is consistent with the sixth amendment right to counsel to count uncounseled prior convictions in calculating a defendant's criminal history category under the Sentencing Guidelines for a subsequent offense. We hold that such a use of prior convictions does not violate the sixth amendment. We find the numerous other claims raised by the defendants to be without merit. However, we grant defendant Gonzalez's request to modify an error in his judgment so that it conforms with the district court's oral pronouncement of his sentence.
 
 BACKGROUND
 
 2
 The facts need only be briefly summarized. A confidential informant for the Drug Enforcement Agency (DEA) in his role as a seller of marijuana looking for a buyer met with several middlemen in September and early October 1988. On October 4, 1988, he was introduced to Guillermo Picat who in turn introduced him to his "partners," Edwin Cintron-Rodriguez and Julio Castro-Vega. Picat, Cintron-Rodriguez and Castro-Vega told the informant that they wanted to purchase 1500 pounds of marijuana. A day later, Cintron-Rodriguez and the informant agreed on a price of $300 per pound. But a few days thereafter Cintron-Rodriguez told the informant that for financial reasons he wanted to start with a 300 pound purchase with a larger transaction to follow.
 
 
 3
 On October 19, 1988, Cintron-Rodriguez telephoned the informant that he was ready. They agreed to meet at La Milonga restaurant in Manhattan. The informant went to the restaurant. Cintron-Rodriguez subsequently arrived in a Jeep Wrangler with Mario Gonzalez in the front passenger seat. Picat and Castro-Vega arrived in a blue Camaro. When the informant entered the back seat of the Jeep, Gonzalez took a bag from under the front seat and joined the informant in the back seat. Cintron-Rodriguez introduced Gonzalez to the informant as "Johnny" who he said was "the money man." Gonzalez opened the bag and showed the informant a quantity of United States currency.
 
 
 4
 Both cars proceeded to Zeke's restaurant on the southwest corner of 11th Avenue and 52nd Street in Manhattan. Gonzalez remained in the Jeep parked on 11th Avenue. Cintron-Rodriguez, Picat, Castro-Vega and the informant went inside. They agreed on the terms of the transaction and the informant told them that his partner would bring the marijuana to the restaurant. As DEA agents took up surveillance at Zeke's, one agent parked an undercover van containing some 430 pounds of marijuana in bales wrapped in plastic on the north side of 52nd Street across from Zeke's. At about the same time Picat left the restaurant to join Gonzalez.
 
 
 5
 At about 7:20 P.M., DEA Agent Pizarro, posing as the informant's partner, entered Zeke's and met the informant, Cintron-Rodriguez and Castro-Vega. The informant introduced Agent Pizarro as his partner. The agent then handed Cintron-Rodriguez two pieces of paper indicating that he had two bales of marijuana totalling 272 pounds for sale at a price of $300 per pound. Castro-Vega then asked to see the marijuana. The agent took him to the van and showed him the bales stacked inside. The agent declined to let Castro-Vega physically inspect the marijuana. Castro-Vega then asked if it was the same marijuana as the sample that had been previously given by the informant to one "Jose," a middleman.
 
 
 6
 At this point Picat left the driver's side of the Jeep where he had been sitting with Gonzalez and hurried down 52nd Street toward the van. As he approached, Picat shouted to Castro-Vega to "watch out for the guy in the cab," nodding to an undercover surveillance taxi cab. Agents thereupon arrested Picat and Castro-Vega next to the van, Gonzalez seated in the Jeep and Cintron-Rodriguez as he attempted to run from Zeke's.
 
 
 7
 Following the arrests, agents found a bag containing $27,980 in cash under the passenger seat of the Jeep where Gonzalez had been sitting and a bag containing another $8,000 in cash under a seat in the blue Camaro. Cintron-Rodriguez had in his possession the papers given to him by Agent Pizzaro that described the terms of the transaction, a paper with the informant's name and telephone number, a beeper and a calculator. Castro-Vega had in his possession title to the blue Camaro. Picat had in his possession a piece of paper with the informant's name and beeper number on it and another with the informant's telephone number on it. Gonzalez had in possession a card with Cintron-Rodriguez' nickname "Piki" and beeper number on it. In post-arrest statements, Picat admitted that he had gone to Zeke's on October 19, 1988 to buy marijuana and Cintron-Rodriguez stated that he had gone to Zeke's to buy marijuana but had not brought sufficient money to make the purchase.
 
 
 8
 At the trial of Cintron-Rodriguez, Castro-Vega, Picat and Gonzalez, Cintron-Rodriguez called the only defense witness, his brother-in-law, who testified that he had employed Cintron-Rodriguez in his furniture business for the past four years; that he had always known him to use the name "Piki"; and that Cintron-Rodriguez used a beeper and a calculator in connection with furniture deliveries. The witness said that Cintron-Rodriquez suffered from a speech impediment and "was not too bright."
 
 
 9
 Following the jury trial, the three were convicted of one count of conspiracy to possess with intent to distribute more than one hundred kilograms of marijuana in violation of 21 U.S.C. § 846. Judge Edelstein imposed the following sentences: Castro-Vega received 156 months imprisonment with eight years of supervised release and a $50.00 special assessment; Gonzalez received 80 months imprisonment with five years of supervised release and a $50.00 special assessment;[1] and Cintron-Rodriguez received 121 months imprisonment with five years of supervised release and a $50.00 special assessment.
 
 
 10
 The defendants have raised numerous issues on this appeal. All of them save two are without merit and warrant no discussion.DISCUSSION
 
 
 11
 I. Criminal History Category Based on Prior Uncounseled Conviction
 
 
 12
 Judge Edelstein sentenced Cintron-Rodriguez pursuant to the Sentencing Guidelines under criminal history category level III, based on three prior convictions for weapons possession and one prior misdemeanor conviction in 1984 for driving while under the influence of alcohol (DUI) in Florida. At the time of the Florida DUI conviction, Cintron-Rodriguez, who received a probationary sentence, waived counsel. If this DUI conviction had not been included in calculating his criminal history category, Cintron-Rodriguez would have been in category II rather than III, and his Guidelines range would have been 87-108 instead of 97-121 months.
 
 
 13
 Cintron-Rodriguez contends that the district court erred by including the uncounseled Florida DUI conviction in calculating his criminal history category. We disagree.
 
 
 14
 First, Cintron-Rodriguez argues that he was denied a chance to show at sentencing that his prior Florida DUI conviction was constitutionally invalid. He argues that he did not validly waive counsel because the waiver of counsel form he signed "did not inform him that he had a right to counsel regardless of the sentence to be imposed." However, a defendant does not have the right to counsel regardless of the sentence to be imposed and if the form had so admonished him it would have been incorrect. Where, as in Cintron-Rodriguez's case, a defendant is convicted of a misdemeanor and no jail term is imposed, no sixth amendment right to counsel attaches. Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158, 59 L.Ed.2d 383 (1979). Since there has been no determination as to the validity of Cintron-Rodriguez's waiver of counsel, however, we will consider, arguendo, his contention that the waiver was invalid.
 
 
 15
 We find that Cintron-Rodriguez's sentence was permissible under the Guidelines. The Background Comment to the 1990 edition of Guideline § 4A1.2 states that "[p]rior sentences, not otherwise excluded, are to be counted in the criminal history score, including uncounseled misdemeanor sentences where imprisonment was not imposed." (emphasis added). What the Guidelines permit, however, may nonetheless be unconstitutional. As we noted in United States v. Arigbodi, 924 F.2d at 464, "the Commentary does not decide the substantial constitutional question that remains, namely, whether it is consistent with the sixth amendment right to counsel to count uncounseled convictions ... in calculating a defendant's criminal history score." Id. In Arigbodi, we declined to reach the argument since it had not been raised below.
 
 
 16
 In Baldasar v. Illinois, 446 U.S. 222, 100 S.Ct. 1585, 64 L.Ed.2d 169 (1980), the Supreme Court held that while an uncounseled misdemeanor conviction is constitutionally valid if the offender is not incarcerated, Scott v. Illinois, 440 U.S. 367, 99 S.Ct. 1158 (1979), such a conviction may not be used as a predicate to convert a second such conviction from a misdemeanor into a felony with a prison term.
 
 
 17
 Cintron-Rodriguez contends that his increased prison term based on the DUI conviction is unconstitutional under Baldasar. The Baldasar per curiam decision was a narrow one, containing no discussion of the relevant sixth amendment principles, but rather relying on the reasoning of three somewhat divergent concurring opinions. Although the reasoning of four of the Justices of the Baldasar plurality suggests that they would view any enhanced penalty based on a prior misdemeanor conviction as unconstitutional, the concurring opinion of the fifth member of the plurality, Justice Blackmun, provides no guidance in this case. Instead, Justice Blackmun voted with the majority because he believed, based on his dissenting view in Scott, that the right to counsel in misdemeanor cases should attach where the crime is punishable by more than six months imprisonment regardless of the sentence imposed; therefore he believed that the defendant's initial uncounseled conviction itself should have been ruled unconstitutional. Thus, we find that there is no common denominator applicable to this case upon which all of the Justices in the Baldasar majority agreed. See Schindler v. Clerk of Circuit Court, 715 F.2d 341, 345 (7th Cir.1983), cert. denied, 465 U.S. 1068, 104 S.Ct. 1419, 79 L.Ed.2d 745 (1984) (Baldasar "provides little guidance outside of the precise factual context in which it arose"); United States v. Robles-Sandoval, 637 F.2d 692, 693 n. 1 (9th Cir.), cert. denied, 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981) ("The Court in Baldasar divided in such a way that no rule can be said to have resulted"); see generally United States v. Eckford, 910 F.2d 216, 219-20 (5th Cir.1990) (noting limited scope of Baldasar ).
 
 
 18
 The problem posed in this case--calculating a defendant's criminal history by relying in part on a prior uncounseled misdemeanor conviction--is different from the situation in Baldasar. In Baldasar, the defendant's prior conviction materially altered the substantive offense for which he could be held criminally responsible by converting it from a misdemeanor to a felony with a prison term--an offense that on its own would trigger a right to counsel. In the instant case, the court used an uncounseled misdemeanor conviction to determine the appropriate criminal history category for a crime that was already a felony. See id. (Baldasar does not preclude use of prior uncounseled misdemeanor convictions to determine sentence for subsequent offense); see also Schindler, 715 F.2d at 345 (prior uncounseled civil DUI violation could be used as basis for computing prison sentence for subsequent DUI criminal conviction under same statute); United States v. Peagler, 847 F.2d 756, 758 (11th Cir.1988) (per curiam) (allowing reliance on uncounseled convictions, but only "as they related to defendant's character, and ... reputation"); United States v. Robles-Sandoval, 637 F.2d 692, 693 n. 1 (9th Cir.), cert. denied, 451 U.S. 941, 101 S.Ct. 2025, 68 L.Ed.2d 330 (1981) (deportation order valid for purposes of supporting guilt or enhancing subsequent criminal punishment for illegally re-entering United States). But see Moore v. Jarvis, 885 F.2d 1565, 1571-73 & n. 14 (11th Cir.1989) (Baldasar would forbid "increased term of incarceration solely upon consideration of a prior conviction" where counsel was unavailable to indigent defendant); United States v. Brady, 928 F.2d 844 (9th Cir.1991). In the absence of any clear direction from the Supreme Court, and given the narrowness of the Baldasar holding, we decline to extend Baldasar to this case.
 
 II. Gonzalez's Sentence
 
 19
 Although the district court orally sentenced Gonzalez to a term of imprisonment of 80 months with a five year term of supervised release and a $50.00 special assessment, Gonzalez's judgment of conviction erroneously indicates a sentence of 87 rather than 80 months. We therefore grant Gonzalez's request--unopposed by the Government--to amend his judgment to conform with the district court's oral pronouncement.
 
 III. Conclusion
 
 20
 We have considered the defendants' other claims on appeal and we find them to be without merit. We therefore affirm the convictions and sentences of all three defendants except that we order that Gonzalez's judgment be amended to reflect a term of imprisonment of 80 months instead of 87 months.
 
 
 21
 Affirmed in part, judgment modified in part.
 
 
 
 [1]
 Gonzalez's judgment of conviction erroneously indicates a sentence of 87 rather than 80 months