**UNITED STATES of America, Appellee,**

v.

**Frederick C. KEPPLER, Defendant–Appellant.**

No. 1469, Docket 93–1035.

United States Court of Appeals, Second Circuit.

Argued May 7, 1993.

Decided Aug. 11, 1993.

Mark D. Oettinger, Burlington, VT (Bloomberg & Oettinger, of counsel), for appellant.

John M. Conroy, Asst. U.S. Atty., D. Vermont, Burlington, VT (Charles A. Caruso, U.S. Atty., D. Vermont, David V. Kirby, Chief, Criminal Div., Office of the U.S. Atty., D. Vermont, Burlington, VT, of counsel), for appellee.

Before: MESKILL, PIERCE and WALKER, Circuit Judges.

MESKILL, Circuit Judge:

This is an appeal from a sentence entered on a judgment of the United States District Court for the District of Vermont, Parker, *C.J.*, convicting appellant Frederick C. Keppler, upon his plea of guilty, of one count of mail fraud, in violation of 18 U.S.C. § 1341, and one count of filing a false income tax return, in violation of 26 U.S.C. § 7206(1). Keppler was granted a two level reduction in his offense level under the United States Sentencing Guidelines (Guidelines) for acceptance of responsibility pursuant to Guidelines § 3E1.1(a), and now claims that the district court erred in not granting him an additional one level reduction pursuant to Guidelines § 3E1.1(b). Because Keppler has waived this argument by failing to raise it below, we affirm.

Keppler was employed by the Roman Catholic Diocese of Burlington, Vermont from 1976 to 1985 as Controller and from 1985 to 1989 as Director of Administrative Services. Using two different schemes, Keppler embezzled funds from the Diocese during the years 1980 through 1989. As Controller, Keppler diverted for his own use "special collections" money solicited by the parish churches from parishioners for special charitable purposes such as the Catholic Relief Services. As Director of Administrative Services, Keppler diverted money by inflating the cost of computer equipment on invoices that he sent to the parish churches when he, as an agent for the Diocese, purchased the equipment for them. Additionally, Keppler failed to report the proceeds from his embezzlement on his federal income tax returns.

In late January 1991, counsel was appointed for Keppler in the expectation that a plea to an information could be negotiated. At that point, Keppler had already voluntarily met with a Federal Bureau of Investigation (FBI) special agent on three occasions. Following a May 23, 1991 meeting between the government, the FBI, Keppler and Keppler's counsel, a Memorandum of Agreement was produced in which Keppler agreed to waive indictment, plead guilty to both counts of the Information, enter into a Stipulation of Facts and make restitution insofar as he was able.

Keppler also agreed to file amended income tax returns for the years 1985 through 1989. The Stipulation of Facts specifies that during the period from 1980 through 1989, Keppler embezzled a total of $212,187.07 from the Diocese. The Memorandum of Agreement, Information and Stipulation of Facts were filed on May 29, 1991. On June 3, 1991, Keppler pled guilty to the Information pursuant to the Memorandum of Agreement.

On December 29, 1992, a sentencing hearing was held. At the hearing Keppler argued that despite his prior stipulation to a loss in the amount of $212,187, the actual amount of loss suffered by the Diocese was $180,661. Keppler argued that therefore it would be improper to adjust his base offense level pursuant to Guidelines § 2F1.1(b)(1)(I) for a loss in excess of $200,000, as contemplated by the presentence report. Specifically, Keppler testified that two checks for special collection funds that he had allegedly diverted should not have been included in the amount in the Stipulation of Facts or in the Guidelines calculations. Keppler had deposited the two checks, one in 1980 and one in 1981, into a money market account that he had opened in the name of the Diocese but about which the Diocese had no knowledge. In 1982, Keppler drew from the account the exact amounts that he had deposited, and paid the amounts to the designated charities. The government claimed that Keppler had embezzled the funds but that he later paid them over to the proper charities when questioned by the Diocese. Keppler claimed at the hearing that he had merely held the money for the Diocese. The sentencing court discredited Keppler's testimony and found the amount of the checks to be properly includable in the loss calculation, which had the effect of putting the overall loss over the $200,000 threshold of Guidelines § 2F1.1(b)(1)(I). The court indicated that it was prepared to set Keppler's adjusted offense level at 15, which included an upward adjustment of eight levels for a loss of over $200,000, and a downward adjustment of three levels pursuant to Guidelines § 3E1.1 for Keppler's acceptance of responsibility.

After the court stated its intentions the government moved that Keppler be denied

all or part of Guidelines § 3E1.1's acceptance of responsibility adjustment, and asked that the court also impose an obstruction of justice enhancement pursuant to Guidelines § 3C1.1 on the basis that Keppler testified falsely concerning the disputed checks. The court denied the obstruction enhancement; however, it refused to grant all three levels of reduction available under the acceptance of responsibility provision, stating that "the defendant clearly has demonstrated acceptance for the offense, and I think he's entitled to the negative two adjustment, but I do believe that the information provided was not quite complete, and accordingly I'm not going to give him the third point." The resulting adjusted offense level was 16, which, given a criminal history category of I, would result in a sentencing range of 21 to 27 months incarceration and supervised release of two to three years.

Keppler did not object to the two level adjustment for acceptance of responsibility but instead presented arguments for sentencing in the lower half of the sentencing range and for a downward departure based on Keppler's advanced age and allegedly poor health. The court then imposed a sentence of 23 months imprisonment and two years supervised release on Count One. The court imposed a lesser concurrent sentence on Count Two, a non-Guidelines offense. The court asked if either attorney "know[s] of any reason why the sentence I have just articulated may not be properly imposed," to which both attorneys responded in the negative. Keppler filed a notice of appeal to this Court on January 8, 1993.

Keppler's only argument on appeal is that the district court misapplied the acceptance of responsibility provision of the Guidelines.[1] Keppler argues that Guidelines § 3E1.1 was misapplied in two respects: (1) Chief Judge Parker's finding pursuant to Guidelines § 3E1.1(b)(1) that Keppler had not provided complete information to the government was conclusory and not supported by the evidence, and (2) Chief Judge Parker never made the required finding pursuant to Guidelines § 3E1.1(b)(2) as to whether Keppler had timely notified authorities of his intention to enter a plea of guilty. Neither part of this argument was raised below. It appears to us that the second part, however, had it been raised below, might have merit. When a sentencing court determines that a defendant is entitled to an offense level reduction of two levels pursuant to Guidelines § 3E1.1(a), the court must then determine whether the conditions of Guidelines § 3E1.1(b) have been met, and if they have, the court must grant the third level of reduction. The sentencing transcript in this case indicates that Chief Judge Parker may have failed to consider Guidelines § 3E1.1(b)(2) when determining whether the third level of reduction was warranted.[2] We hold, however, that Keppler's failure to raise this argument below precludes our reaching the merits of the argument on appeal.

Generally, issues not raised in the trial court, including sentencing issues, will be deemed waived on appeal in the absence of "[p]lain errors or defects affecting substantial rights." Fed.R.Crim.P. 52(b); *see United States v. Rodriguez*, 943 F.2d 215, 216 (2d Cir.1991); *United States v. Keats*,

1. Guidelines § 3E1.1, as amended on November 1, 1992, provides as follows:
*Acceptance of Responsibility*
(a) If the defendant clearly demonstrates acceptance of responsibility for his offense, decrease the offense level by 2 levels.
(b) If the defendant qualifies for a decrease under subsection (a), the offense level determined prior to the operation of subsection (a) is level 16 or greater, and the defendant has assisted authorities in the investigation or prosecution of his own misconduct by taking one or more of the following steps:
(1) timely providing complete information to the government concerning his own involvement in the offense; or

(2) timely notifying authorities of his intention to enter a plea of guilty, thereby permitting the government to avoid preparing for trial and permitting the court to allocate its resources efficiently,
decrease the offense level by 1 additional level.

2. It is Chief Judge Parker's apparent failure to consider § 3E1.1(b)(2) in determining whether to grant the third level of reduction that is problematic in this case, not his factual determinations under § 3E1.1(b), which are entitled to "great deference on review." Guidelines § 3E1.1, Application Note 5; *see United States v. Booth*, 996 F.2d 1395, 1397 (2d Cir.1993) (per curiam).

937 F.2d 58, 68 (2d Cir.), *cert. denied,* —— U.S. ——, 112 S.Ct. 399, 116 L.Ed.2d 348 (1991); *United States v. Altman,* 901 F.2d 1161, 1165–66 (2d Cir.1990); *United States v. Irabor,* 894 F.2d 554, 555 (2d Cir.1990). Although an exception to this doctrine which permitted review of certain novel sentencing guidelines appeals existed "during the infancy of the Guidelines," *United States v. McCall,* 915 F.2d 811, 814 (2d Cir.1990), we have made clear that the Guidelines are no longer in their infancy. *Rodriguez,* 943 F.2d at 217 ("We now believe that the Guidelines have outgrown their infancy and come into adolescence, if not full maturity. Consequently, we caution defendants that in the future we will be hesitant to consider on appeal sentencing issues not raised in the district court."). Additionally, as the Guidelines issues raised here are not particularly novel or complex, application of the exception to our general rule does not appear warranted. *See United States v. Caba,* 955 F.2d 182, 187 (2d Cir.), *cert. denied sub nom. Valdez v. United States,* —— U.S. ——, 113 S.Ct. 130, 121 L.Ed.2d 84 (1992); *see also McCall,* 915 F.2d at 814 (basing the "infancy" exception on "the prolixity of the Guidelines and the unfamiliarity of counsel and the judiciary with their application").

■ We will, of course, consider an argument not raised below if it meets the standard of plain error. To meet this standard, the alleged errors or defects must "affect a defendant's 'substantial rights,' Fed. R.Crim.P. 52(b), the violation of which would result in 'manifest injustice.'" *United States v. Arigbodi,* 924 F.2d 462, 464 (2d Cir.1991) (per curiam) (quoting *United States v. Thomas–Hamilton,* 907 F.2d 282, 284 (2d Cir. 1990)); *see also United States v. Surasky,* 974 F.2d 19, 21 (5th Cir.1992) ("'[P]lain error' is 'error so obvious that our failure to notice it would seriously affect the fairness, integrity, or public reputation of [the] judicial proceedings and result in a miscarriage of justice.'" (quoting *United States v. Lopez,* 923 F.2d 47, 50 (5th Cir.), *cert. denied,* —— U.S. ——, 111 S.Ct. 2032, 114 L.Ed.2d 117

(1991))), *cert. denied,* —— U.S. ——, 113 S.Ct. 1948, 123 L.Ed.2d 653 (1993). In the case before us this standard is not met. Even if Keppler were given the full three level adjustment for acceptance of responsibility, his sentence of 23 months imprisonment would fall squarely within the resulting sentencing range of 18 to 24 months. We have held that when a defendant "could have received exactly the same sentence in the absence of the alleged error, we cannot say that its occurrence affected defendant's 'substantial rights' resulting in a 'manifest injustice.'" *Arigbodi,* 924 F.2d at 464. Additionally, Keppler's failure to raise the issue of misapplication of Guidelines § 3E1.1 may have been a strategic decision, having decided instead to argue for a downward departure based on poor health and advanced age.[3]

Because Keppler did not present to the district court the arguments he now presents to us, they can be reviewed only under plain error analysis. Because Keppler has failed to show plain error, we affirm the district court.

---

**3.** Given the district court's finding on the record that the information provided by Keppler was not complete, Keppler may have been reluctant to push for the third level for fear that the entire adjustment under § 3E1.1 might be questioned.