**UNITED STATES of America,**
**Appellee,**

v.

**Dmitri KEIGUE, Defendant–Appellant.**

No. 02–1030.

United States Court of Appeals,
Second Circuit.

Argued Sept. 27, 2002.

Decided Jan. 31, 2003.

Yuanchung Lee, The Legal Aid Society, Federal Defender Division Appeals Bureau, New York City (The Legal Aid Society, Federal Defender Division Appeals Bureau, New York City, of counsel), for Appellant.

Timothy S. Driscoll, Assistant United States Attorney, Eastern District of New York, Brooklyn, N.Y. (David C. James, Assistant United States Attorney, Alan Vinegrad, United States Attorney for the Eastern District of New York, Brooklyn, NY, of counsel), for Appellee.

Before: MESKILL, SACK and KATZMANN, Circuit Judges.

MESKILL, Circuit Judge.

The defendant-appellant Dmitri Keigue (Keigue) appeals his sentence entered in

the United States District Court for the Eastern District of New York, Raggi, *J.* Keigue was convicted of six counts of mail fraud in violation of 18 U.S.C. § 1341 and one count of uttering counterfeit securities in violation of 18 U.S.C. § 513(a). Keigue was sentenced to 15 months imprisonment, three years of supervised release, and a $700 special assessment. Subject matter jurisdiction is proper pursuant to 18 U.S.C. § 3231 as Keigue was charged with an offense against the laws of the United States. *See* 18 U.S.C. § 3231. Appellate jurisdiction lies pursuant to 28 U.S.C. § 1291 as this is an appeal from a final judgment. *See* 28 U.S.C. § 1291.

## BACKGROUND

*The Charges and Trial*

Evidence adduced at trial established that between September 13, 2000 and October 7, 2000, using the Internet and the mails, Keigue opened accounts at six different brokerage firms including Merrill Lynch & Company, Charles Schwab, My-DiscountBroker.com, Muriel Siebert & Company, First Trade Securities, and J.B. Oxford & Company. Keigue attempted to fund each of these accounts with two checks: one in the amount of $100 drawn from a Citibank account in his name, and the other in the amount of $10,000, purportedly drawn from a Chase Manhattan Bank account also bearing Keigue's name.

Although the $100 Citibank checks were genuine, the evidence established that the Chase Manhattan Bank account did not exist and that each of the $10,000 checks purportedly drawn on that account and sent through the United States mail were counterfeit. A number of the brokerage accounts that Keigue opened provided him with the ability to purchase securities valued at twice the amount of cash value

supposedly in his account. Ultimately, Keigue's plan was unsuccessful as no trades were ever made on any of the six accounts. As the district court later observed, the scheme was doomed from the beginning, as authorities would quickly discover that the checks Keigue submitted would not clear.

On November 2, 2000, Keigue was arrested, and on November 17, 2000, a grand jury returned an indictment charging Keigue with seven counts of mail fraud and one count of uttering and possessing a counterfeit security. Trial began on September 10, 2001, and a week later a jury found Keigue guilty on all counts charged.[1] Following the verdict, the district judge set sentencing for December 14, 2001. In November 2001, the Sentencing Guidelines were amended.

*The Probation Department's Presentence Report*

In its Presentence Report (PSR), the Probation Department stated that "an *ex post facto* issue would exist" if the 2001 Sentencing Guidelines were used to determine Keigue's sentence. The Sentencing Guidelines require that a defendant be sentenced under the version of the Guidelines in effect on the date of sentencing. *See* U.S.S.G. § 1B1.11(a) (2002); *see also United States v. Gonzalez,* 281 F.3d 38, 45 (2d Cir.2002) (citing 18 U.S.C. § 3553(a)(4)(A)). Where, however, the version of the Guidelines in effect on the date of sentencing calls for a more severe penalty than the version in effect at the time of the offense, the earlier version should be applied to avoid a violation of the *Ex Post Facto* Clause of the Constitution. *See Gonzalez,* 281 F.3d at 45 (citing U.S.S.G. § 1B1.11(b)(1)). *See generally Miller v. Florida,* 482 U.S. 423, 429–35, 107 S.Ct. 2446, 96 L.Ed.2d 351 (1987) (dis-

---

**1.** On the government's motion, one count of mail fraud was dismissed before trial.

cussing *ex post facto* prohibition). The Probation Department offered no explanation for its conclusion that an *ex post facto* issue would result from its use of the 2001 Guidelines and proceeded to calculate Keigue's recommended sentencing range using the 1998 Guidelines.

Referencing section 2F1.1 of the expired 1998 Guidelines, the PSR fixed Keigue's base offense level at 6, which is appropriate for "Offenses Involving Altered or Counterfeit Instruments." U.S.S.G. § 2F1.1(a) (1998). Because the PSR determined that the "intended loss" of Keigue's scheme totaled $100,000, 6 levels were added. *See* U.S.S.G. § 2F1.1(b)(1)(G) (1998) (requiring the addition of 6 levels where the amount of loss exceeds $70,000). Another 2 levels were added because Keigue's offense involved a scheme to defraud more than one victim. *See* U.S.S.G. § 2F1.1(b)(2)(B) (1998). The result of the PSR's calculations was an adjusted offense level of 14, which, when combined with Keigue's criminal history category of I, yielded a Guidelines range of 15 to 21 months. *See* Sentencing Table (1998) (intersection of offense level 14 and criminal history category I).

As it turned out, use of the 2001 Guidelines would not have raised any *ex post facto* issues. Had the court adopted the PSR's proposed intended loss figure of $100,000, the 2001 Guidelines would have resulted in Keigue receiving the same adjusted offense level of 14 that he received under the 1998 Guidelines. Specifically, his offense level of 6 would have remained the same. *See* U.S.S.G. § 2B1.1(a) (2001). Keigue then would have received an 8–level enhancement for a loss totaling more than $70,000. *See* U.S.S.G. § 2B1.1(b)(1)(E) (2001). There would have been no enhancement for an offense

involving a scheme to defraud more than one victim, however, as that provision was deleted under the 2001 amendments. *See* U.S.S.G. § Appendix C, amendment 617 (2001) (deleting U.S.S.G. § 2F1.1).

In a letter to the court prior to sentencing, Keigue requested that he be sentenced at the bottom of the applicable range, citing his mental illness and the fact that no one suffered actual loss as a result of his unlawful scheme. Neither the government nor Keigue raised any objections to the PSR. In fact, Keigue expressly stated that he did not dispute the Probation Department's findings.

*The December 2001 Sentencing*

The sentencing took place on December 14, 2001, at which time the 2001 Guidelines were in effect. After confirming that the parties had no "factual challenges" to the Probation Department's findings, the district court, *sua sponte*, questioned the PSR's calculation of the "amount of loss" implicated by Keigue's scheme. For reasons not relevant to this appeal, the district court concluded that it was "more inclined to find the potential loss to be in the range of $50,000." Because the 1998 Guidelines added 5 levels to the base offense level when the amount of loss fell between $40,000 and $70,000, *see* U.S.S.G. § 2F1.1(b)(1)(F) (1998), rather than the 6 levels associated with the PSR-calculated $100,000 figure, the court decreased Keigue's adjusted offense level from 14 to 13. *See* U.S.S.G. § 2F1.1(b)(1)(G) (1998). The result of this adjustment was a Guidelines range of 12 to 18 months. *See* Sentencing Table (1998) (intersection of offense level 13 and criminal history category I). Application of the 2001 Guidelines to the $50,000 loss figure would have yielded a range of 10 to 16 months.[2] *See* Sentencing

---

**2.** According to the 2001 Guidelines, Keigue would have started with a base offense level

of 6. *See* U.S.S.G. § 2B1.1(a) (2001). Six levels would have been added based on a loss

Table (2001) (intersection of offense level 12 and criminal history category I).

The court then noted for the record that Keigue's criminal efforts to defraud the brokerage houses represented a "very stupid scheme" that "would inevitably have been discovered quite quickly" when the counterfeit checks failed to clear. It then imposed sentence: "Having reviewed all the facts and circumstances, I think it's appropriate to sentence Mr. Keigue in the middle of his Guideline range. I sentence you, Mr. Keigue, to a term of 15 months[.]" Neither party raised any objections immediately following the court's sentence.

This appeal followed.

## DISCUSSION

It is helpful at the outset to set forth what is not at issue in this appeal. First, both parties agree that the PSR was incorrect in concluding that, using the $100,000 loss figure, an *ex post facto* issue existed under the 2001 Guidelines. Second, the parties do not dispute that the district court's use of the 1998 Guidelines to determine Keigue's offense level in light of its amended $50,000 loss figure constitutes an error normally requiring reversal. *See United States v. Keller,* 58 F.3d 884, 893 (2d Cir.1995) (holding that use of expired version of Guidelines where there is no *ex post facto* issue constitutes plain error). Finally, the parties do not contest that Keigue's failure to raise this error below requires that our review be confined to one of plain error. Where Keigue and the government part ways, however, is on the

type of plain error review applicable and the ultimate result of that review.

### A. Standard of Review

The government argues that Keigue's failure to bring the expired Guidelines issue to the attention of the district court requires that we undertake a traditional plain error analysis, which precludes us from correcting an error unless it affects a defendant's "substantial rights." *See United States v. Keppler,* 2 F.3d 21, 23–24 (2d Cir.1993) (noting that sentencing issues not raised in trial court are waived on appeal in absence of "[p]lain errors ... affecting substantial rights." (quoting Fed. R.Crim.P. 52(b))). Keigue contends that our recent decision in *United States v. Sofsky,* 287 F.3d 122 (2d Cir.2002), governs our review here and permits us to entertain his challenge without insisting on strict compliance with the rigorous standards of Rule 52(b). *See id.* at 125–26. We need not now resolve this difference between the government and the defendant because nothing turns on it here. The outcome, for the reasons discussed below, is the same regardless of which standard we use. For the purpose of our inquiry, we assume without deciding that traditional plain error analysis applies.

■ To establish plain error, a court must find "1) an error, 2) that is plain, 3) that affects substantial rights." *United States v. Gordon,* 291 F.3d 181, 191 (2d Cir.2002). Under this analysis, there must be an " 'error,' or deviation from a legal rule which has not been waived." *United States v. Viola,* 35 F.3d 37, 41 (2d Cir.1994) (citation omitted), *recognized as abrogated*

---

figure of $50,000. *See* U.S.S.G. § 2B1.1(b)(1)(D) (2001) (calling for 6–level increase where loss exceeds $30,000). Because the 2001 Guidelines do not provide for a 2–level enhancement where the offense involves a scheme to defraud more than one victim, Keigue's final adjusted offense level would

have been 12. *See* U.S.S.G. Appendix C, amendment 617 (deleting U.S.S.G. § 2F1.1). When combined with a criminal history category of I, this figure would have produced a range of 10 to 16 months. *See* Sentencing Table (2001) (intersection of offense level 12 and criminal history category I).

*on other grounds in United States v. Zichettello,* 208 F.3d 72, 99 n. 13 (2d Cir. 2000). That error is considered "plain" if it is " 'clear' or 'obvious' at the time of appellate consideration." *Gordon,* 291 F.3d at 193 (citation omitted). Such an error affects the " 'substantial rights' [of a defendant] if [it] is 'prejudicial' and 'affect[s] the outcome of the district court proceedings.' " *Id.* (citation omitted). If an error meets these first three requirements, "the Court engages in a fourth consideration: whether or not to exercise its discretion to correct the error. The plain error should be corrected only if it 'seriously affects the fairness, integrity, or public reputation of judicial proceedings.' " *Id.* at 191 (quoting *Jones v. United States,* 527 U.S. 373, 389, 119 S.Ct. 2090, 144 L.Ed.2d 370 (1999)).

### B. *The Merits*

#### 1. *An Error Was Committed*

■ The Sentencing Guidelines explicitly mandate that a court use the version of the Guidelines in effect on the date of the defendant's sentencing. *See* U.S.S.G. § 1B1.11(a) (2002); *see also Gonzalez,* 281 F.3d at 45 ("Generally, the Guidelines in effect on the date the defendant is sentenced should govern the sentence imposed.") (citing 18 U.S.C. § 3553(a)(4)(A)). The exception to this rule arises when "the version of the Guidelines in effect at the time of sentencing is more 'severe,' than the version in effect when the offense was committed." *Id.* (citation omitted). In such cases, "there is an *ex post facto* problem and the earlier Guidelines should be applied." *Id.; see also* U.S.S.G. § 1B1.11(b)(1) (2002). Here, there was no *ex post facto* problem. Using the district court's $50,000 loss figure, Keigue's offense level under the 1998 Guidelines was 13. *See* U.S.S.G. §§ 2F1.1(b)(1)(F) and (b)(2)(B). Keigue's offense level under the

2001 Guidelines would have been 12. *See supra* n. 2. Consequently, it was error for the district court to calculate Keigue's offense level using the expired version of the Guidelines in effect on the date the offense was committed.

#### 2. *The Error Was Plain and Affected Substantial Rights*

■ We have held that where there is "no *ex post facto* problem, it [is] plain error to fail to apply" the version of the Guidelines in effect at the time of the sentencing. *Keller,* 58 F.3d at 893. At the same time, under other circumstances, we have declined to find plain error in instances where a defendant could have received the same sentence in the absence of the alleged error, reasoning that such an error does not affect the "substantial rights" of a defendant. *See United States v. Diaz,* 176 F.3d 52, 117–18 (2d Cir.1999) (concluding that there was no plain error where incorrect application of § 3B1.1(a) enhancement resulted in sentence of 288 months because, even without enhancement, sentence still fell within correct Guidelines range of 262 to 327 months); *Keppler,* 2 F.3d at 23–24 (concluding that there was no plain error where court determined range to be 21 to 27 months and sentenced defendant to 23 months, even though correct application of challenged sentencing provision would have resulted in lower range of 18 to 24 months); *United States v. Arigbodi,* 924 F.2d 462, 463–64 (2d Cir.1991) (per curiam) (declining to find plain error where district court sentenced defendant to 77 months based on allegedly incorrect range and where remedying alleged error would have resulted in lower range of 63 to 78 months). *But see United States v. Martinez–Rios,* 143 F.3d 662, 676 (2d Cir.1998) (finding plain error where court sentenced defendant to 37 months based on range of 37 to 46 months

arrived at through mathematical mistake; absent incorrect calculation range would have been 33 to 41 months). These decisions raise the question of whether a defendant can establish plain error where, as here, the sentencing judge uses an incorrect version of the Guidelines, but imposes a sentence that falls within the overlapping portion of both the correct and incorrect ranges.

Citing *Diaz, Keppler,* and *Arigbodi,* the government argues that the district court's use of the wrong version of the Guidelines does not warrant remand because the 15–month sentence Keigue asked for and received fell within the ranges called for by both the expired 1998 Guidelines (calling for a range of 12 to 18 months) and the effective 2001 Guidelines (calling for a range of 10 to 16 months). Because Keigue could have received the same sentence in absence of the error, the government contends, his "substantial rights" were not affected and no "manifest injustice" occurred. *See Diaz,* 176 F.3d at 118 ("[W]hen a defendant could have received exactly the same sentence in the absence of the alleged error, we cannot say that its occurrence affected defendant's substantial rights resulting in a manifest injustice.") (internal citations and quotation marks omitted); *accord Keppler,* 2 F.3d at 24; *Arigbodi,* 924 F.2d at 464. Keigue responds that even if our holding in *Keller* does not mandate a finding of plain error, our decision in *Martinez–Rios*—where we concluded that a defendant had established plain error despite the fact that he could have received the same sentence under either of the two arguably applicable Guidelines ranges—requires remand. *See Martinez–Rios,* 143 F.3d at 676. Because the facts before us more closely mirror those facing the *Martinez–Rios* panel, we agree with Keigue and remand for resentencing.

While, at first blush, the conclusion of the *Martinez–Rios* panel appears in conflict with our holdings in *Arigbodi, Keppler,* and *Diaz,* these decisions can (and should) be reconciled with one another. To do so, a more detailed account of *Martinez–Rios* is necessary. The defendant there pled guilty to charges that he had conspired to evade income taxes in violation of 26 U.S.C. § 7201. *See id.* at 665. The nature of that offense, like numerous others covered by the Guidelines, required that the district court determine the precise amount of tax loss attributed to the defendant. *See id.* at 669–70. A larger tax loss corresponded with a higher sentencing range. *See id.* (acknowledging "a key component of the Guidelines' sentencing philosophy—the idea that there must be some precise incremental punishment for every identifiable increment of wrongdoing"). Due to a mathematical error, the district court incorrectly arrived at a tax loss figure of just over $1.5 million which, when adjusted and combined with the defendant's criminal history score, resulted in a sentencing range of 37 to 46 months. *See id.* at 675 (citing U.S.S.G. § 2T4.1(M) (1991)). Absent the erroneous calculation, however, the amount of loss would have come up just short of the $1.5 million mark and resulted in, after adjustments, a lower range of 33 to 41 months. *See id.*

On appeal, we acknowledged that the ultimate sentence imposed—37 months—fell within the overlapping portion of both ranges. *See id.* Nevertheless, we concluded that the district court's mistake "undoubtedly affected substantial rights within the meaning of Rule 52, because it resulted in [the defendant's] receiving a longer sentence than the District Court intended to give him." *Id.* at 676 (internal quotation marks omitted). We added that the mistake was of the type that seriously affected "the fairness, integrity or public reputation of judicial proceedings," reason-

ing that "one would be hard-pressed to think of a more senseless injustice than the deprivation of a citizen's liberty for several months as a result of a clerical error." *Id.* (internal quotation marks and citation omitted). As a consequence, we found plain error and remanded for resentencing. *See id.* at 678.

In reaching our conclusion in *Martinez–Rios,* we rejected the government's reliance on *United States v. Bermingham,* 855 F.2d 925 (2d Cir.1988), a non-plain error case in which a panel of this Court explained that a sentence based on an incorrect Guidelines range could be affirmed when: (1) that sentence also fell within the correct range, and (2) the district court indicated that it would have imposed the same sentence under either range. *See Martinez–Rios,* 143 F.3d at 676 (citing *Bermingham,* 855 F.2d at 935). Distinguishing *Bermingham,* we quoted the district judge who, in imposing sentence, observed that the defendant had been collaterally punished by the proceedings before it and that "in good conscience" he could not impose "any sentence above the minimum." *Id.*

With respect to the specific elements of plain error analysis, *Martinez–Rios* differs from Arigbodi, *Keppler* and *Diaz* in its conclusion that the unobjected-to error affected the defendant's "substantial rights" because the *Martinez–Rios* court was confident that the defendant *would* have received a *different,* shorter sentence absent the oversight. *See Martinez–Rios,* 143 F.3d at 676. Somewhat differently, the *Arigbodi* line of cases expresses a reluctance on our part to find that a defendant's substantial rights were affected where. he or she *"could* have received" the *same* sentence under either Guidelines range. *See Diaz,* 176 F.3d at 118 (stating that court could not say that error's occurrence affected defendant's substantial rights

where "a defendant could have received exactly the same sentence in the absence of the alleged error"); *Keppler,* 2 F.3d at 24 (same); *Arigbodi,* 924 F.2d at 464 (same). In *Martinez–Rios,* however, while the defendant *could* have received the same sentence under either range, the district court's statements at the sentencing hearing permitted the inference that, absent the error, the defendant in fact *would* have received a *different,* shorter sentence. *See Martinez–Rios,* 143 F.3d at 676 (noting that error "undoubtedly 'affected substantial rights' within the meaning of Rule 52, because it resulted in [the defendant's] receiving a longer sentence than the District Court intended to give him").

The comments of the sentencing judge in Keigue's case, like those of the district court in *Martinez–Rios,* reflect her intent to choose a term of imprisonment based on where it fell within the applicable Guidelines range, rather than her decision to choose a term of months based on a sentence she "had . . . in mind before endeavoring to select the applicable guideline." *Bermingham,* 855 F.2d at 934. Although we conclude that the sentencing judge's comment would have been sufficient by itself to require resentencing, we believe that her decision to reduce the amount of loss attributed to Keigue makes his case for remand even stronger than that of the defendant in *Martinez–Rios.* As noted earlier, the Probation Department initially recommended that the court increase Keigue's offense level by 6, pursuant to U.S.S.G. § 2F1.1(b)(1)(G), based on the Probation Department's determination that the amount of loss totaled $100,000. *See* U.S.S.G. § 2F1.1(b)(1)(G) (1998) (requiring increase of 6 levels where loss exceeded $70,000). Neither party questioned this calculation when the district judge inquired as to whether there were any "factual challenges" to the PSR. Despite Keigue's silence, the district judge, on her own, reduced the loss figure to

$50,000, which had the effect of decreasing Keigue's adjusted offense level by one. Her unilateral decision to reduce the amount of loss belies any argument that she would have imposed the same sentence under the lower range called for by the 2001 Guidelines and supports the notion that she was selecting the sentence based on where it fell within the applicable range. *Cf. Bermingham,* 855 F.2d at 935 (noting, in non-plain error case, that "[s]ituations may arise ... where a sentencing judge determines that the appropriate sentence is whatever number of months are at or near the bottom of the applicable guideline range" in which cases "it obviously matters which guideline range is applicable"). Had she intended to impose a sentence of 15 months regardless of where that term fell within the applicable range, the sentencing judge could have done so without going to the trouble of amending the PSR-calculated loss figure, which yielded a range of 15 to 21 months in the first instance. In light of the above, we believe that, had the correct range been used, there is a strong likelihood that the district court's intention to sentence Keigue in the "middle" of the applicable range would have resulted in his receiving a sentence of 13 months rather than the 16 months actually imposed under what all parties agree was the incorrect Guidelines range. Because we believe Keigue received a longer sentence than the court intended to give, we conclude that his "substantial rights" were affected. *See Martinez–Rios,* 143 F.3d at 676.

3. *Left Uncorrected, the Error Seriously Affects the Fairness, Integrity and Public Reputation of Judicial Proceedings*

■ The effect on Keigue's substantial rights does not end our inquiry. "Rule 52(b) is permissive, not mandatory." *United States v. Olano,* 507 U.S. 725, 735, 113 S.Ct. 1770, 123 L.Ed.2d 508 (1993).

While we have authority to correct a forfeited error that is "plain" and affects the "substantial rights" of a defendant, we are not required to exercise that authority. *See id.* As the Supreme Court recently confirmed, "an appellate court may ... exercise its discretion to notice a forfeited error, but only if [ ] the error seriously affects the fairness, integrity, or public reputation of judicial proceedings." *United States v. Cotton,* 535 U.S. 625, 122 S.Ct. 1781, 1785, 152 L.Ed.2d 860 (2002) (internal citations and quotation marks omitted). Here, we choose to exercise our discretion and correct the error. To allow an oversight like the one described above to remain uncorrected and increase the length of a defendant's sentence would seriously undermine the public's confidence in the judicial process. *Cf. United States v. Weaver,* 161 F.3d 528, 530 (8th Cir.1998) (acknowledging that public's confidence in justice system would be subverted if "inadvertent typographical error were ... allowed to influence the length of a criminal defendant's sentence").

■ Accordingly, we hold that where, as here, the record permits the inference that a defendant *would* have received a different, shorter sentence absent the unobjected-to error, the defendant's substantial rights have been affected within the meaning of Rule 52(b). Our conclusion in this respect properly takes into account the holdings of *Diaz, Keppler,* and *Arigbodi,* where other factors led us to conclude that the respective defendants not only *could* have received the same sentences under either of two arguably applicable ranges, but that in all likelihood, they *would* have. *See Diaz,* 176 F.3d at 118 (finding no plain error where district court's findings at sentencing suggested that, even absent error, "[defendant] would still have received the same sentence"); *Arigbodi,* 924 F.2d at 464 (explaining that district court's comments at sentencing gave "strong indication" that regardless of the incorrect crimi-

nal history score, district court would have sentenced defendant to same—or greater—term of imprisonment). *Cf. Keppler,* 2 F.3d at 24 (finding that defendant's substantial rights were not affected and noting that failure to object at sentencing hearing may have been strategic decision).[3]

 Our holding here also represents a logical extension of this court's teaching in *Bermingham* to cases applying plain error review. In *Bermingham,* we observed that Guidelines disputes may be left unresolved where the same sentence *would* (not could) have been imposed under either of two overlapping ranges. *See Bermingham,* 855 F.2d at 935. In explaining our rationale, we described a situation, such as the one later addressed in *Arigbodi,* where the comments of a district court suggested that regardless of which of two arguably applicable Guidelines ranges applied it would have sentenced the defendant to the same term of imprisonment. *See id.* at 934. Implicit in the Court's ruling was the notion that, where it is not clear from the record that the district court *would* have sentenced a defendant to the same number of months, we must remand for clarification. Our holding in this case is not simply a recapitulation of that proposition; nor should it be, in light of the heavier burden faced by a defendant appealing an unobjected-to sentencing error. Our holding today instead requires that a defendant seeking to establish plain error point to something in the record permitting an inference that the district court *would* have imposed a *different,* shorter sentence had the correct, lower Guidelines range been applied. *Cf. Martinez–Rios,* 143 F.3d at 676 (refusing, in plain error case, to apply *Bermingham* because the district court's remarks sug-

gested that it would have sentenced defendant to a lower term had the correct, lower range been applied).

Here, because we have reason to believe that, absent the error, the district court's stated intention to sentence Keigue in the "middle" of the sentencing range would have led to a shorter sentence under the lower range, we conclude that he has established plain error.

## CONCLUSION

Because the defendant has established plain error, we vacate the sentence of the district court and remand this matter to the district court for resentencing under the correct Guidelines range of 10 to 16 months. While we draw an inference as to what the district court intends, we do not suggest what the proper sentence should be.

---

**3.** *See United States v. Bayless,* 201 F.3d 116, 128 (2d Cir.2000) (noting that in applying plain error review courts should factor into their analysis "whether the party seeking re-

lief under the plain error rule may have originally made a strategic decision not to object to the conduct ... challenged on appeal").