**UNITED STATES of America, Appellee,**

v.

**Myles RAPPAPORT, Defendant–Appellant.**

**No. 1532, Docket 92–1646.**

United States Court of Appeals, Second Circuit.

Argued May 18, 1992.

Decided July 21, 1993.

58

Arthur J. Viviani, New York City, for defendant-appellant.

Susan Corkery, Asst. U.S. Atty., E.D.N.Y. (Mary Jo White, U.S. Atty., Peter A. Norling, Asst. U.S. Atty., E.D.N.Y., of counsel), for appellee.

Before: LUMBARD, CARDAMONE, and ALTIMARI, Circuit Judges.

ALTIMARI, Circuit Judge:

Defendant-appellant Myles Rappaport appeals from a judgment of conviction entered in the United States District Court for the Eastern District of New York (Denis R. Hurley, *Judge*), following Rappaport's plea of guilty to conspiracy to defraud the United States, in violation of 18 U.S.C. § 286 (1988), and three counts of filing a fraudulent tax return, in violation of 18 U.S.C. § 287 (1988). In sentencing Rappaport, the district court concluded that Rappaport's Criminal History Category was IV. This was based in part on the court's conclusion that two prior robbery convictions in Florida should be treated as separate offenses. *See* U.S.S.G. § 4A1.2. By treating these convictions separately, the district court effectively raised Rappaport's Criminal History Category from III to IV. *See* U.S.S.G. § 5A. In addition, the district court, in calculating Rappaport's adjusted offense level, imposed both a four-level enhancement for his leadership role pursuant to U.S.S.G. § 3B1.1(a) and a two-level increase for more than minimal planning under U.S.S.G. § 2F1.1(b)(2)(A). The imposition of these two enhancements resulted, after a three-level reduction for acceptance of responsibility, in a total offense level of 20.

On appeal, Rappaport first contends that the district court erred by treating his two robbery convictions separately. According to Rappaport, the two convictions were related within the meaning of Application Note 3

to U.S.S.G. § 4A1.2, because by operation of Florida law the robberies were consolidated for sentencing. Rappaport also argues that the district court engaged in impermissible double counting by increasing his offense level for both his leadership role and for more than minimal planning.

For the reasons set forth below, we affirm the judgment of the district court.

## BACKGROUND

Between 1989 and 1991, Rappaport, an accountant with an advanced degree in finance, masterminded a scheme which enabled him to obtain tax refunds from the IRS by filing false individual tax returns. Rappaport and his cohorts filed a total of 81 fraudulent returns, seeking refunds amounting to $813,381.96. This conspiracy resulted in an actual loss to the United States Treasury of $122,854.34. In order to accomplish this fraud, Rappaport enlisted at least 10 people to help him obtain false and fictitious employment and income tax withholding information and documentation.

This scheme was ultimately uncovered, and Rappaport was subsequently charged in an indictment with conspiracy to defraud the United States in violation of 18 U.S.C. § 286 (1988) and three counts of filing a fraudulent tax return in violation of 18 U.S.C. § 287 (1988). On August 10, 1992, Rappaport entered a guilty plea to all counts in the indictment.

The Pre–Sentence Investigation Report (PSR) determined that Rappaport's Criminal History Category was IV. This was based on seven criminal history points. Rappaport received four points because of two prior robbery convictions, resulting from two robberies in Florida on September 23 and 26, 1989. Rappaport received two additional points because he had committed the instant offense while on probation and one additional point because he had committed the instant offense less than two years after he was discharged from prison. The PSR calculated Rappaport's combined adjusted offense level to be 23. This included a four-level increase for his leadership role in the conspiracy, pursuant to U.S.S.G. § 3B1.1(a). Rappaport also received a two-level increase for more than minimal planning under U.S.S.G. § 2F1.1(b)(2)(A). Finally, the PSR awarded Rappaport a two-level reduction for his prompt acceptance of responsibility, resulting in a total offense level of 21 and a Sentencing Guideline range of 57–71 months.

At sentencing Rappaport challenged the PSR, but not on the two grounds raised in this appeal. The district court rejected Rappaport's contentions, which are not at issue here, and substantially accepted the recommendation made in the PSR. The district court granted Rappaport an additional one point reduction to reflect more fully his acceptance of responsibility. This resulted in a total offense level of 20, and a Guideline range of 51–63 months. The government then made a motion for a further downward departure based on Rappaport's substantial assistance. The district court observed that it would have sentenced Rappaport to 63 months, but that in light of his cooperation it was imposing a 45 month sentence. Rappaport also was sentenced to 3 years of supervised release and was ordered to pay a $200 special assessment.

Rappaport now appeals solely to challenge the propriety of his sentence.

## DISCUSSION

### I. *Criminal History Category*

On appeal, Rappaport first contends that the district court erred by assigning four criminal history points to his two prior convictions. Specifically, Rappaport argues that these two convictions were related within the meaning of Application Note 3 to U.S.S.G. § 4A1.2, because by operation of Florida law the robberies were consolidated for sentence. Therefore, Rappaport maintains that he should have only received two criminal history points for his robbery convictions, which would have placed him in Criminal History Category III. *See* U.S.S.G. § 5A. Rappaport's contention is without merit.

█] Initially it should be noted that Rappaport did not specifically raise this argument below. Consequently, this Court will not review this claim absent plain error. *See United States v. Rodriguez,* 943 F.2d 215,

217 (2d Cir.1991). Notwithstanding this fact, it is clear that Rappaport's criminal history category was correctly calculated.

Section 4A1.2(a)(2) of the Guidelines provides in pertinent part:

Prior sentences imposed in unrelated cases are to be counted separately. Prior sentences imposed in related cases are to be treated as one sentence for purposes of [computing criminal history points].

Application Note 3 to this section explains that cases are considered related, if they, among other things "were consolidated for trial or sentencing." U.S.S.G. § 4A1.2, comment, (n. 3). Florida criminal procedure, as Rappaport notes, allows one judge to dispose of all charges pending against a defendant entering a guilty plea before that court. Fla. R.Crim.P. 3.170(b). Rappaport's robbery convictions were disposed of in this manner. Therefore, Rappaport maintains that the two cases should have been treated as related.

■ This Court has held, however, that the imposition at the same time by the same judge of two sentences which run concurrently does not necessarily establish that the cases were "consolidated for sentencing," and were therefore "related" under U.S.S.G. § 4A1.2(a)(2). *United States v. Lopez*, 961 F.2d 384, 387 (2d Cir.1992). Florida's sensible procedural rule was clearly designed to foster judicial economy and cannot be read to address whether cases are "related" for criminal history purposes. As this Court observed in *Lopez*, "in the interest of easing crowded dockets and limiting costs, a judge may find it expedient to resolve all matters simultaneously with regard to one defendant. Such a practice plainly does not indicate that the cases were in fact consolidated for purposes of the Guidelines." *Id.* at 387; *see also United States v. Aubrey*, 986 F.2d 14, 15 (2d Cir.) (per curiam) (applying *Lopez* "even if the sentences in the prior unrelated cases were imposed pursuant to a single plea bargain"), *cert. denied*, —— U.S. ——, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993). Rather, for crimes to be deemed related there must exist "a close factual relationship between the underlying convictions." *Lopez*, 961 F.2d at 387.

■ The robberies at issue here were committed three days apart, and were not related by a common plan or scheme. The victims and the sites of the crimes differed. While both crimes involved elderly victims, the *modus operandi* differed somewhat. In one case Rappaport abducted a woman and forced her to accompany him to a bank, where he cashed one of her checks. In the other robbery, Rappaport left a victim stranded after robbing him. Therefore, the district court was correct in finding that these robberies were not part of a common plan or scheme. *See, e.g., United States v. Chartier*, 970 F.2d 1009, 1016 (2d Cir.1992).

## II. Double Counting

■ Rappaport next argues that the district court impermissibly double counted by increasing his offense level by four-levels for his leadership role in a criminal activity that involved five or more participants, pursuant to U.S.S.G. § 3B1.1(a), as well as increasing his offense level by two-levels for more than minimal planning, pursuant to U.S.S.G. § 2F1.1(b)(2)(A). We disagree.

As this Court noted in *United States v. Campbell*, 967 F.2d 20, 25 (2d Cir.1992), "double counting is legitimate where a single act is relevant to two dimensions of the Guidelines analysis." For example, in *United States v. Marsh*, 955 F.2d 170, 171 (2d Cir.1992), we rejected an analogous double counting argument that challenged enhancements for more than minimal planning and for abuse of trust. In so doing, we noted in *Marsh* that the enhancements were not duplicative, because they reflected different facets of the defendant's conduct. *Id.*

Likewise, in *United States v. Boula*, 932 F.2d 651, 654–55 (7th Cir.1991), the court concluded that leading and planning a crime were two distinct aspects of criminal conduct. *But see United States v. Romano*, 970 F.2d 164, 167 (6th Cir.1992) (holding that the district court impermissibly double counted because § 3B1.1(a) takes into account the conduct penalized in § 2F1.1(b)(2)). In rejecting an identical claim, the *Boula* court noted that, "a defendant could have a key role in a criminal scheme that required minimal planning." *Boula*, 932 F.2d at 654–55. For ex-

 

ample, a group of individuals standing on a street corner could conceivably be cajoled by a member of the group into committing a crime on the spur of the moment. Conversely, a defendant could be the sole perpetrator of a crime that required a great deal of planning. An increase under both provisions does not necessarily reflect the same facet of Rappaport's conduct.

It is on this basis that we distinguish the instant case from *United States v. Hudson,* 972 F.2d 504 (2d Cir.1992), where this Court found that the district court impermissibly engaged in double counting under the Sentencing Guidelines. The defendant in *Hudson* pled guilty to assaulting two United States Deputy Marshals, in violation of 18 U.S.C. § 111 (1988), after he drove his car directly at them. *Id.* at 505. In sentencing Hudson, the court relied on his use of an automobile as a dangerous weapon in classifying the assault as an aggravated one. *See* U.S.S.G. § 2A2.2, comment. (n. 1). This classification effectively increased Hudson's base offense level. Hudson's use of the car as a dangerous weapon also *necessarily* resulted in a four-level enhancement by the district court, pursuant to U.S.S.G. § 2A2.2(b)(2), which provides a graduated adjustment scheme for aggravated assaults where a weapon was "otherwise used." *Id.* at 506–07. As we noted in *Hudson,* an automobile is not an inherently dangerous weapon. *Id.* It was Hudson's use of the car as a weapon that resulted in two separate increases in calculating his total offense level under the Sentencing Guidelines. Because of Hudson's use of the automobile as a weapon, he was deemed to have committed an aggravated rather than a minor assault, and within the sentencing framework for aggravated assaults Hudson was given a four-level enhancement for having "otherwise used" a dangerous weapon. Both of these increases necessarily reflected the same facet of Hudson's conduct. By contrast here, the fact that Rappaport had a leadership role in a scheme involving more than five people did not necessarily require him to engage in more than minimal planning. Because leading and planning are disparate aspects of criminal conduct, we reject Rappaport's double counting argument.

## CONCLUSION

Based on the foregoing, the judgment of the district court is affirmed.