UNITED STATES of America, Appellee,

v.

Steven KELLER, Defendant–Appellant.

No. 936, Docket 94–1394.

United States Court of Appeals, Second Circuit.

Argued Feb. 3, 1995.

Decided July 7, 1995.

Terrence P. Buckley, Hauppauge, NY, for appellant.

Douglas T. Burns, Asst. U.S. Atty., E.D. of N.Y., Brooklyn, NY (Zachary W. Carter, U.S. Atty., David C. James, Asst. U.S. Atty., E.D. of N.Y., Brooklyn, NY, of counsel), for appellee.

Before: FEINBERG, CARDAMONE and McLAUGHLIN, Circuit Judges.

CARDAMONE, Circuit Judge:

Steven Keller appeals from the sentence imposed on him by the United States District Court for the Eastern District of New York (Wexler, J.) after he pled guilty to the crime of possessing a firearm while a convicted felon. His principal contention is that the sentencing court erred by not crediting against his federal sentence the time he had already served in state prison for the offense in which the firearm was used.

The nub of the problem on this appeal is seen by examining the different provisions found in the sentencing guidelines at the time of Keller's offense (the 1989 Guidelines) and when sentence was imposed (the 1993 Guidelines). When appellant robbed at gunpoint a female courier about to deposit $7,000 of her employer's cash receipts in a bank in Huntington, New York, the 1989 Guidelines gave no credit to federal defendants for time already served in state prison. The 1993 Guidelines give such credit when the defendant is subject to an undischarged term of imprisonment resulting from offenses taken into account in determining the federal sentence; but the 1993 Guidelines, unlike the 1989 Guidelines, also include an enhanced sentence for a person guilty of possession of a firearm who has been convicted of three violent felonies.

Keller seeks credit for time served in state prison pursuant to the 1993 Guidelines and application of the 1989 Guidelines to avoid having his federal sentence enhanced for pos-

sessing a firearm after he had been convicted of three violent felonies. In effect, he would have the sentencing court pick and choose the best parts of both worlds, that is, those parts of the earlier and later guidelines most advantageous to him. The fair administration of criminal justice does not call for sentencing courts to perform such a convoluted sentencing procedure. Nonetheless, since no *ex post facto* violation occurs when applying the 1993 Guidelines as a whole, Keller was improperly sentenced by the district court under guidelines no longer in effect at the time of his sentencing. We therefore vacate his sentence and remand for resentencing.

## BACKGROUND

The facts are not disputed. On June 29, 1990 appellant committed an armed robbery. Displaying a Smith & Wesson revolver, he robbed a female courier in a bank parking lot and left her handcuffed to the steering wheel of her car. He was apprehended and pled guilty in state court to robbery in the second degree, a crime involving the display of a firearm, for which he was sentenced on December 5, 1990 to serve four to eight years in state prison.

More than two years later, on March 4, 1993, a federal grand jury in the Eastern District of New York charged appellant in a two-count indictment with possession of a firearm by a convicted felon, in violation of 18 U.S.C. § 922(g)(1) (1988), and possession of a firearm by a person convicted of three violent felonies, in violation of 18 U.S.C. § 924(e)(1) (1988). The federal charges relate to the same weapon used in the June 29, 1990 armed robbery.

Keller entered into a plea agreement with the government under which he pled guilty to the § 922(g) violation (possession of a firearm by a convicted felon) and the government agreed to dismiss the § 924(e) charge (possession of a firearm by a person convicted of three violent felonies), which latter charge carried a mandatory minimum sentence of 15 years. The plea agreement estimated a guidelines imprisonment range of 92–115 months for appellant's offense level and criminal history.

The presentence investigation report, prepared by the U.S. Probation Office, applied the 1989 Guidelines because it was thought that an *ex post facto* problem would arise were Keller sentenced under the 1993 Guidelines. While Keller did not specifically object to this recommendation, he did take issue with numerous aspects of the presentence report, contending that guideline § 5G1.3(b) of the 1993 Guidelines [1] should be applied to credit him for the time served in state custody. He maintained further that he should receive a three-point reduction for acceptance of responsibility, a level of reduction available under the 1993 Guidelines, but not under the 1989 Guidelines. At his sentencing hearing on June 30, 1994 appellant reiterated his argument that he be given credit for time served in state custody. Applying the 1989 Guidelines that afforded no such credit, the district court sentenced Keller to 92 months imprisonment, three years supervised release and a $50 special assessment, the 92 months to run concurrently with the time remaining to be served on his state sentence. From this sentence, Keller appeals.

## DISCUSSION

Appellant challenges the failure to credit the time served in state prison against his 92 month federal sentence and the failure to credit him for time he had already been held in federal custody prior to his federal sentencing. Keller also avers the criminal history category used to calculate his sentence was incorrectly determined. In addition, he maintains that the 27 month delay from the imposition of his state sentence until federal prosecution was initiated denied him due process of law. We discuss these issues in turn.

### I What Guidelines Apply?

#### A. *Plain Error*

The primary error alleged by Keller is the district court's failure to credit the time he

---

**1.** Keller's objection actually refers to the 1994 Guidelines. Because the guideline version effective November 1, 1994 was not yet in existence at the time of sentencing, it is clear that Keller meant the guidelines effective November 1, 1993, which we refer to as the 1993 Guidelines.

had served in state prison for armed robbery against his federal sentence for possession of a firearm while a convicted felon. Appellant argues that his sentence is controlled by an amendment to the sentencing guidelines enacted after the date of his offense but before he was sentenced. His point is that either the amendment simply clarified the guidelines existing at the time of the offense or, alternatively, the guidelines in effect at the time of his sentencing should be applied. If application of the amended guidelines poses an *ex post facto* problem, he continues, a sentencing court is empowered to excise any single provision. Specifically, he contends that the sentencing court should have applied the 1993 Guidelines without their thrice-convicted violent felon enhancement.

■ Keller's point essentially calls into question whether an *ex post facto* issue would have existed had the 1993 Guidelines determined his sentence. Because he did not explicitly object to the use of the 1989 Guidelines, we may reverse only if their application constituted plain error. *See* Fed.R.Crim.P. 52(b); *see also United States v. Keppler*, 2 F.3d 21, 23–24 (2d Cir.1993) (collecting cases).

■ Plain error exists where an error or defect affects a defendant's substantial rights and results in a manifest injustice. As our analysis will show, Keller's sentence under the 1993 Guidelines would be significantly lower than the range provided for under the 1989 Guidelines. Thus, the question of which version of the guidelines applies raises a fundamental issue substantially affecting the amount of time this defendant will be incarcerated, and it is therefore subject to review for plain error. *See United States v. Hernandez–Fundora*, 58 F.3d 802, 813 (2d Cir. 1995) (plain error where resulting five year sentence exceeds the 41–51 month range absent the error), *cert. denied*, —— U.S. ——, 115 S.Ct. 2288, 132 L.Ed.2d 290 (1995); *cf. Keppler*, 2 F.3d at 24 (if defendant could have received same sentence without error, error does not amount to "plain error"). Accordingly, we consider the merits.

**B. Ex Post Facto *Clause and Sentencing Guidelines***

On November 1, 1990, after Keller committed the June 1990 robbery but before his June 1994 sentencing, guideline § 4B1.4, the armed career criminal guideline, became effective. That guideline subjects a defendant to an enhanced sentence for possessing a firearm after having been convicted of three violent felonies. Application of this new provision, in isolation, would have resulted in an increase in Keller's federal sentence. To avoid this *ex post facto* problem, the presentence report recommended using the guidelines in effect on June 29, 1990, the date of Keller's offense, which is exactly what the sentencing court did.

■ Generally, a sentencing court must use the version of the guidelines in effect at the time of defendant's sentencing, not that extant at the time of the offense. *See* 18 U.S.C. § 3553(a)(4) (1988); *see also United States v. Reese*, 33 F.3d 166, 173 (2d Cir. 1994), *cert. denied*, —— U.S. ——, 115 S.Ct. 756, 130 L.Ed.2d 655 (1995). Yet, when the guidelines are amended after the defendant commits a criminal offense, but before he is sentenced, and the amended provision calls for a more severe penalty than the original one, those guidelines in effect at the time the offense was committed govern the imposition of sentence. The reason for this is to avoid a violation of the *Ex Post Facto* Clause of the Constitution, Art. I, § 9, cl. 3. *See generally Miller v. Florida*, 482 U.S. 423, 429–35, 107 S.Ct. 2446, 2450–53, 96 L.Ed.2d 351 (1987).

Since the earliest days of our Republic it was understood that that clause prohibits, among other things, application of a "law that changes the punishment, and inflicts a greater punishment, than the law annexed to the crime, when committed." *Calder v. Bull*, 3 U.S. (3 Dall.) 386, 390, 1 L.Ed. 648 (1798). To violate this constitutional prohibition a statute (1) "must be retrospective, that is, it must apply to events occurring before its enactment," and (2) "must disadvantage the offender affected by it." *Miller v. Florida*, 482 U.S. at 430, 107 S.Ct. at 2451 (quoting *Weaver v. Graham*, 450 U.S. 24, 29, 101 S.Ct. 960, 964, 67 L.Ed.2d 17 (1981)); *see also*

*United States v. Meeks,* 25 F.3d 1117, 1119 (2d Cir.1994). Application of the 1993 Guidelines satisfies the first prong of this test. Whether sentencing Keller under the 1993 Guidelines would disadvantage him, as the second prong requires, and as the district court believed, is the focus of the following discussion. Before resolving that critical issue, we must first analyze the rules that govern how the guidelines are to be applied.

## C. *Rules Governing Guidelines' Application*

■ A version of the sentencing guidelines is to be applied in its entirety. A sentencing court has no authority to pick and choose, taking one provision from an earlier version of the guidelines and another from a later version. We adhere to the so-called "one-book" rule that most other circuits use to avoid twisting the guidelines, depriving them of uniformity and consistency. *See United States v. Stephenson,* 921 F.2d 438, 441 (2d Cir.1990); *see also United States v. Bertoli,* 40 F.3d 1384, 1404 n. 17 (3d Cir.1994); *United States v. Nelson,* 36 F.3d 1001, 1004 (10th Cir.1994); *United States v. Springer,* 28 F.3d 236, 237–38 (1st Cir.1994); *United States v. Milton,* 27 F.3d 203, 210 (6th Cir.1994), *cert. denied,* —— U.S. ——, 115 S.Ct. 741, 130 L.Ed.2d 642 (1995); *United States v. Lance,* 23 F.3d 343, 344 (11th Cir.1994); *United States v. Boula,* 997 F.2d 263, 265–66 (7th Cir.1993); *United States v. Warren,* 980 F.2d 1300, 1304–06 (9th Cir.1992), *cert. denied,* —— U.S. ——, 114 S.Ct. 397, 126 L.Ed.2d 344 (1993); *United States v. Lenfesty,* 923 F.2d 1293, 1299 (8th Cir.), *cert. denied,* 499 U.S. 968, 111 S.Ct. 1602, 113 L.Ed.2d 665 (1991); U.S.S.G. § 1B1.11(b)(2) (Nov.1993).

The one-book rule is most often discussed in the context of requiring the application of an entire earlier version of the guidelines manual when the use of an amended provision would otherwise implicate *ex post facto* concerns. *See, e.g., Bertoli,* 40 F.3d at 1404 n. 17 ("[W]hen *ex post facto* clause issues arise, while the one-book rule cannot apply to compel application of the *later* Manual to all counts, it certainly can compel application of the earlier Manual."). Nonetheless, the one-book rule must also be employed to determine in the first instance whether an *ex post facto* problem exists. Such employment accords with the text of the guidelines and with what decisional law has implicitly recognized.

■ The Sentencing Guidelines state that "[t]he Guidelines Manual in effect on a particular date shall be applied in its entirety," § 1B1.11(b)(2), and that "[i]f the court determines that use of the Guidelines Manual in effect on the date the defendant is sentenced would violate the *ex post facto* clause" the guidelines in effect on the date of the offense are to be used, § 1B1.11(b)(1). These two provisions express the principle that the analysis is conducted by applying an entire version of the guidelines, and not by examining one provision of those guidelines in isolation. It is when the use of a "Guidelines Manual" applied as an indivisible whole violates the *Ex Post Facto* Clause, that those guidelines in effect at the time of the offense must be turned to.

The Supreme Court's opinion in *Miller v. Florida* supports the use of the one-book rule in analyzing whether a particular version of the guidelines presents an *ex post facto* problem. *Miller* established that an amendment to a sentencing scheme violates the constitutional ban if it is enacted after the commission of a crime and before sentencing, and its application results in a more onerous penalty. *See* 482 U.S. at 431–33, 107 S.Ct. at 2451–52. The Supreme Court concluded that a guidelines amendment meeting these criteria disadvantaged defendant, and continued, "[c]onsidering the revised guidelines law as a whole does not change this result.... [Florida] has not been able to identify any feature of the revised guideline law that could be considered ameliorative." *Id.* at 431–32, 107 S.Ct. at 2451–52.

■ *Miller* thus stands for the proposition that the determination of whether an amended version of the guidelines is detrimental to a defendant is to be made by examining the version as a whole. *Accord Weaver v. Graham,* 450 U.S. 24, 34–35, 101 S.Ct. 960, 967, 67 L.Ed.2d 17 (1981) (statute reducing "gain time" for prisoner good conduct violates constitutional prohibition where result is more onerous punishment and other newly enacted provisions for extra gain time do not compen-

sate for the reduction); *Dobbert v. Florida,* 432 U.S. 282, 294–97, 97 S.Ct. 2290, 2298–2300, 53 L.Ed.2d 344 (1977) (comparing two death penalty procedural statutes *"in toto"* to determine if the later statute was more onerous). Hence, the first step is to inquire whether a particular amended provision provides a more onerous penalty for a defendant, disadvantaging him. If it does, the second step is to ascertain whether there are any ameliorative changes to offset the disadvantageous amendment and determine therefore if a potential *ex post facto* problem is actually present. *See United States v. Corrado,* 53 F.3d 620, 624 (3d Cir.1995) ("Some [guidelines] changes might benefit a defendant while others might operate to his or her detriment.... [W]here ... the applicable guidelines overall work to the defendant's advantage in terms of the sentence imposed, there is no *ex post facto* violation."). *But cf. Warren,* 980 F.2d at 1304 n. 2 (citing *Miller* while explicitly declining to decide whether analysis must look to total effect of all relevant guideline changes).

We have implicitly employed this two-step analysis. In *United States v. Paccione,* 949 F.2d 1183 (2d Cir.1991), *cert. denied,* —— U.S. ——, 112 S.Ct. 3029, 120 L.Ed.2d 900 (1992), defendants were sentenced for mail fraud and RICO convictions for the illegal operation of a landfill and transportation of medical waste. Defendants were sentenced under the 1988 version of the guidelines extant at the time of the offenses. Under that version, guideline § 2F1.1—applicable to RICO and mail fraud offenses—resulted in an offense level of 23. But the district court interpreted § 2F1.1 to allow it to look to § 2Q1.2, applicable to the mishandling of hazardous or toxic materials, to reach an offense level of 26. *See id.* at 1202. Defendants challenged the use of § 2Q1.2 to reach the higher offense level.

On appeal we noted § 2F1.1 had been amended after the offense but prior to sentencing. "[W]ere we to apply the amended version, we would likely conclude that the district court should not have calculated [the defendants'] offense levels under the environmental offense sections." *Id.* at 1204. However, other amendments to § 2F1.1 modified the offense level enhancements for specific offense characteristics. These amendments resulted in an offense level of 28 contrasted with a level of 23 under the 1988 version. The benefit to defendants of one change to § 2F1.1 would therefore result in decreasing their offense level from 26 to 23 (by barring application of the environmental offense guideline); another amendment increased that level from 23 to 28. Since the net effect of these amendments increased the offense level, we ruled that the version of the guidelines in effect at sentencing could not be used, and that the sentencing court was required to apply the guidelines in effect at the time of the offense.

■ Implicit in this holding was the following principle: had the changes detrimental to the defendants not more than offset the changes favorable to them, the later version of the guidelines would have been applicable, notwithstanding that one component of the later version would have been less favorable to defendants. *Accord United States v. Amato,* 46 F.3d 1255, 1261–62 (2d Cir.1995) (two-level upward adjustment resulting from guideline amendment does not present *ex post facto* problem if offset by three-level reduction resulting from the amendment). Consequently, it seems reasonable to conclude that we have adopted the view that when positive and negative implications of an amendment result in a net effect favoring defendants, no *ex post facto* problem is present.

■ In both *Paccione* and *Amato* the relevant analysis involved detrimental and ameliorative effects of the same amended guideline. In the instant case, analysis involves the offsetting effects of two different amended guideline sections. In undertaking an *ex post facto* examination, we think it of no consequence whether the ameliorative changes used to offset an otherwise more severe punishment are found in amendments to the same guideline section or in another section of that version of the guidelines. What is significant is a comparison of the version of the guidelines in effect at sentencing against the version in effect at the time the offense was committed.

This approach is in accord with that taken by a number of our sister circuits. Perhaps the most instructive is *United States v. Milton,* 27 F.3d 203, due to its similarity to the facts in the present case. Milton was convicted in state court for assault and use of a firearm. Two years later he was convicted in federal court for possessing that firearm as a convicted felon in violation of 18 U.S.C. §§ 922(g)(1) and 924(e). Had he been sentenced under the 1992 Guidelines, § 4B1.4, the armed career criminal guideline, would have established an imprisonment range of 262 to 327 months. *See id.* at 210 n. 8. Applying the 1988 Guidelines to avoid an *ex post facto* problem—the armed career criminal guideline did not then exist—the imprisonment range was 180–210 months. *See id.* at 205. Milton argued on appeal that under a 1992 amendment to § 5G1.3 he was entitled to have the time already served in state prison credited against his federal sentence. *See id.* at 209.

The Sixth Circuit determined that Milton was properly sentenced under the 1988 Guidelines because the 1992 version, as a result of the armed career criminal provision, significantly increased the range of imprisonment to which Milton was subject. *See id.* at 210. It then applied the one-book rule to determine that it need not apply the amendment to § 5G1.3 unless it merely clarified the earlier version of that guideline, which the court concluded it did not. *Id.* *Milton* then noted that had the 1992 Guidelines been applied in their entirety, and Milton been sentenced to the minimum of that range and been credited with the two years already served in state prison, his federal sentence would have been 238 months. *See id.* at 211. This was 43 months longer than Milton's actual sentence, *see id.,* and 28 months longer than his maximum possible sentence under the 1988 Guidelines. "Thus, Milton's best interests [were] served by applying the 1988 Guidelines rather than the 1992 Guidelines which incorporate the 'adjustment.'" *Id.* That is, even with the ameliorative effect of the amendment to § 5G1.3, the increase resulting from the armed career criminal guideline contained in the 1992 version resulted in a more onerous penalty than would otherwise have been imposed, violating the *Ex Post Facto* Clause.

Other circuits have reasoned in like manner. *See United States v. Nelson,* 36 F.3d 1001, 1003–04 (10th Cir.1994) (amendment resulting in seven-level increase, compared to six-level increase, does not violate *Ex Post Facto* Clause since later version also affords three-level decrease for acceptance of responsibility, compared to two-level decrease; where net effect under earlier and later version is the same, use of later version does not disadvantage defendant); *United States v. Springer,* 28 F.3d 236, 238 (1st Cir.1994) (sentencing proper under earlier version of guidelines providing for nine-level increase for specific offense characteristics and two-level reduction for acceptance of responsibility, for net offense level increase of seven; later version of guidelines carried a 12–level increase and three-level reduction, respectively, resulting in net offense level increase of nine, which would violate constitutional prohibition).

These decisions confirm our conclusion that the one-book rule is used, in the first instance, to determine whether an *ex post facto* problem exists.[2] The amendment of a particular provision will alert a sentencing court to a potential *ex post facto* problem, but only examining the resulting potential sentence, applying the version of the guide-

---

2. We believe it noteworthy that this conclusion is in accord with the unofficial and non-binding position of the staff of the Sentencing Commission, as expressed in its publication "Most Frequently Asked Questions," a publication meant to advise and assist members of the bar.

> [T]he proper test for an *ex post facto* clause violation is whether the *overall* punishment for an offense was increased after the fact.... [I]f the interaction of all applicable guideline amendments does not raise the bottom of the guideline range, a *Miller [v. Florida]* problem does not arise, even if a single amendment might be more harsh than its predecessor.
> ... The court should make two guidelines calculations—one using all of the guidelines in effect at the time of the offense and another using all of guidelines in effect at the time of sentencing. The lower of the two ranges would apply....

United States Sentencing Commission, *Most Frequently Asked Questions About the Sentencing Guidelines* 47 (7th ed. 1994).

lines considered as a whole, fully resolves the question of whether a later version disadvantages a defendant thereby violating the constitutional prohibition.

### D. *Is Keller Disadvantaged by Application of the 1993 Guidelines?*

■ Applying this discussion to the instant case reveals that no *ex post facto* violation would have occurred had the district court followed the general rule and used those guidelines in effect at the time of sentencing. Under the 1989 Guidelines Keller's offense level of 24 and criminal history category of V resulted in a sentencing range of 92–115 months. According to the government's brief, had the 1993 Guidelines been applied after adjustment for acceptance of responsibility, Keller would have had an offense level of 31 and a criminal history category of VI, resulting in a sentencing range of 188–235 months. Because the statutory maximum for a violation of 18 U.S.C. § 922(g) is ten years, his guideline sentence would have been 120 months. *See* U.S.S.G. § 5G1.1(a) ("Where the statutorily authorized maximum sentence is less than the minimum of the applicable guideline range, the statutorily authorized maximum sentence shall be the guideline sentence.").

Thus, it appears at first as though there is an *ex post facto* issue were the 1993 Guidelines to be applied. Upon looking further, it becomes plain that applying the 1993 Guidelines as a whole ameliorates the problem. Under the 1993 Guidelines, § 5G1.3(b) and application note 2 provide that a sentence should be adjusted for any term of imprisonment already served as a result of conduct taken into account in determining the sentence for the instant offense. Keller was sentenced in state court on December 5, 1990. While it is not precisely clear from the record when he began serving this sentence, presumably he was incarcerated shortly after his state sentence was imposed. Therefore, at the time he received his federal sentence appellant had already served about 42 months in state prison. Had the 1993 Guidelines been applied Keller's sentence would have been 120 months, less the 42 months

served, for a total sentence of 78 months. This is less than the 92–115 month range under the 1989 Guidelines. It can be seen therefore that any *ex post facto* effect of § 4B1.4 is more than offset by the relevant changes to § 5G1.3. As a consequence, application of the 1993 Guidelines does not disadvantage Keller.

We pause to resolve the government's contention that had Keller been sentenced under the 1993 Guidelines the 42–month credit would have been applied against the sentencing range of 188–235 months to arrive at a range of 146–193. That guidelines range would then be reduced to 120 months, the statutory maximum, which is more severe than the sentence under the 1989 Guidelines. Under the government's view, then, an *ex post facto* problem arises by application of the 1993 Guidelines. However, the government's application of the guidelines is incorrect. Guideline § 5G1.3, application note 2, illustrates that the credit for time already served is applied as the last step, that is, it is applied after a sentence within the guidelines range is determined. The sequence of steps used by the Sentencing Commission is not fortuitous; rather it comports with the rationale of the credit—to provide a total combined state and federal sentence that the sentencing judge finds appropriate for the conduct underlying both sentences. Again, the result is that Keller is not disadvantaged by being sentenced under the 1993 Guidelines.

■ Finally, that the sentencing court could have decided to downwardly depart from the 1989 Guidelines does not alter the *ex post facto* analysis. Because a sentencing court's decision to depart depends upon a variety of discretionary factors, determining which guidelines version provides the more severe penalty is not aided by adding a potential for departure into the calculus. Indeed, considering such an unknowable factor is analytically unfeasible.

There being no *ex post facto* problem, it was plain error to fail to apply the 1993 Guidelines. Because the wrong version of the guidelines was used to determine Keller's sentence, we must vacate it and remand for resentencing.

## II Credit for Time in Custody

Because we are remanding this case, we briefly discuss the other sentencing issues raised to guide the district court and to resolve them now while they are before us. Keller asserts he should have received credit for time spent in federal custody before sentence was imposed. He was placed in federal custody in the spring of 1993 and sentenced over a year later on June 30, 1994. His liberty was not restrained pending the outcome of his case; he was simply held in a federal jail instead of state prison where he otherwise would have been confined. Credit for prior custody, governed by 18 U.S.C. § 3585(b) (1988), is granted by the Attorney General through the Bureau of Prisons after a defendant is sentenced, not by a district court at the time of sentencing. *See United States v. Wilson,* 503 U.S. 329, 334–35, 112 S.Ct. 1351, 1354–55, 117 L.Ed.2d 593 (1992). To obtain sentencing credit under § 3585 a federal prisoner must first exhaust his administrative remedies before seeking judicial relief. *See id.* at 334, 112 S.Ct. at 1354; *Martinez v. United States,* 19 F.3d 97, 99 (2d Cir.1994) (per curiam). Because appellant has not pursued his administrative remedies, he is not presently entitled to seek judicial relief.

## III Calculation of Criminal History

Keller's third challenge to his sentence alleges errors in the calculation of his criminal history category. His criminal history includes convictions for two attempted robberies, committed four days apart, for which he simultaneously received identical concurrent sentences, and a robbery committed when he was 17 years old, for which he received a two to six year sentence of which he served over two years. Appellant believes that the robbery committed when he was 17 years old should not be counted in computing his criminal history because he was not then an adult, and that the two attempted robbery convictions should be counted as one conviction for determining his criminal history category because they were related.

With respect to the robbery Keller committed when he was 17 years old, he does not argue that the two to six year sentence he received was not an adult sentence; he simply insists that because he was 17 years old this conviction should not be counted toward his criminal history. This argument fails in light of the plain language of the guidelines. The criminal history portion of the guidelines states, in relevant part, that offenses committed prior to age 18 are included if "the defendant was convicted as an adult and received a sentence of imprisonment exceeding one year and one month." U.S.S.G. § 4A1.2(d)(1). Section 4A1.2(d) and the accompanying application note explicitly refer to an offense committed prior to a defendant's having reached age 18 for which he was sentenced as an adult. We think that "adult" modifies "sentence," and does not refer to the defendant's age. Hence, we see no basis to stray from the guideline's language to find Keller was not sentenced as an adult. This conviction was properly included in calculating his criminal history.

Appellant next alleges that the two attempted robbery convictions were "related" and therefore should be treated as one. *See* U.S.S.G. § 4A1.2(a)(2). We review *de novo* a district court's determination of whether convictions are related under § 4A1.2. *See United States v. Lopez,* 961 F.2d 384, 386 (2d Cir.1992). Prior convictions are considered related if they resulted from offenses that "(1) occurred on the same occasion, (2) were part of a single common scheme or plan, or (3) were consolidated for trial or sentencing." U.S.S.G. § 4A1.2 (application note 3).

The two robbery attempts in question occurred four days apart. Apparently they were committed at different locations—one was a Gulf gasoline station—and had separate victims. Appellant tells us that they were part of a "robbery spree" and the two crimes had robbery as their common purpose. Temporal proximity does not demonstrate the close factual relationship between these separate crimes that is required to show they were "related." *See United States v. Rappaport,* 999 F.2d 57, 60 (2d Cir.1993) (robberies committed three days apart, involving different victims and different crime sites not part of a common plan or

scheme); *United States v. Chartier,* 970 F.2d 1009, 1016 (2d Cir.1992) (committing robberies "when and as money is desired or needed" does not constitute a single common scheme or plan); *United States v. Butler,* 970 F.2d 1017, 1027 (2d Cir.) ("we cannot conclude that two similar robberies were part of a single common scheme or plan as a matter of law solely because they were committed 15 minutes apart"), *cert. denied,* — U.S. —, 113 S.Ct. 480, 121 L.Ed.2d 386 (1992). We see no common scheme or close factual relationship present in these two robbery attempts.

As an alternative ground for finding these two convictions related, appellant points out that the robbery attempts were in fact consolidated for sentencing since he was sentenced for them simultaneously and given identical concurrent sentences. In making this argument, Keller relies on a line of decisions in the Ninth Circuit holding, in similar circumstances, that cases were related under § 4A1.2, notwithstanding the lack of formal consolidation. *See United States v. Hummasti,* 986 F.2d 337, 339 (9th Cir.) (two armed robberies committed on two consecutive days, prosecuted under different case numbers, sentenced by the same court in one proceeding to two identical concurrent sentences considered consolidated for sentencing for guidelines purposes), *cert. denied,* — U.S. —, 113 S.Ct. 2984, 125 L.Ed.2d 680 (1993); *United States v. Bachiero,* 969 F.2d 733, 734 (9th Cir.1992) (per curiam) (three offenses for which defendant had been sentenced to identical concurrent sentences in the same proceeding considered consolidated for sentencing for guidelines purposes).

■ This decisional law from our sister circuit does not accurately reflect the law of this Circuit. Simply because the same court imposes concurrent sentences at the same time does not establish that two or more otherwise unrelated cases were "consolidated for sentencing," and therefore "related." *See United States v. Gelzer,* 50 F.3d 1133, 1142–43 (2d Cir.1995); *Lopez,* 961 F.2d at 387; *see also Rappaport,* 999 F.2d at 60; *United States v. Aubrey,* 986 F.2d 14, 14–15 (2d Cir.) (per curiam), *cert. denied,* — U.S. —, 113 S.Ct. 2969, 125 L.Ed.2d 668 (1993).

There is no suggestion in the record before us that the two sentences were imposed simultaneously in one proceeding for any reason other than administrative convenience. Hence, the two convictions were properly separately counted in determining appellant's criminal history category.

### IV Due Process Violation

Keller's final contention is that the failure of federal prosecutors to initiate action against him for 27 months after his state sentencing denied him due process of law. This delay resulted in his having served additional time in state prison before his federal sentence was imposed. Since such time was not being credited against his federal sentence, the result, appellant declares, is more total time of incarceration. The injury complained of is that, in effect, appellant served jail time due to prosecutorial delay.

In light of our remanding this case for resentencing under the 1993 Guidelines we need not address this issue. In fact, the length of this delay, by offsetting the increased penalty under the 1993 Guidelines and thereby obviating the potential *ex post facto* problem, has actually worked to defendant's favor.

### CONCLUSION

Accordingly, for the reasons stated Keller's sentence is vacated and the matter is remanded to the district court for resentencing in accordance with this opinion.